UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH M. DOWNEY | ) |
|          Plaintiff, | ) |
| vs. | ) Case # 1:20-cv-1505 (TJM/DJS) |
| | ) |
| MONRO, INC., | ) |
|          Defendant. | ) |

## COMPLAINT
## (DEMAND FOR JURY TRIAL)

Plaintiff Joseph M. Downey, as and for a complaint against defendant alleges:

### JURISDICTION AND VENUE

1. This Court's jurisdiction over this action's subject matter is predicated on 42 USC 12121, 42 USC 2000e et seq., 29 U.S.C. 623, 28 U.S.C. 1331 and 1343. Plaintiff further invokes supplemental jurisdiction of this Court per 28 USC 1367 to hear and decide plaintiff's state law claims under New York Human Rights Law section 296.

2. The amount in controversy exceeds $50,000., exclusive of interest and costs.

3. Venue is proper in the Northern District of New York per 28 USC 1391, based on a substantial part of the events or omissions giving rise to plaintiff's claim

occurred in Albany County, New York.

## PARTIES

4. Plaintiff, Joseph M. Downey, is a citizen of the United States, residing at 34 Baldwin Road, Glenville, New York 12302, County of Schenectady.

5. Defendant is, upon information and belief, a domestic corporation duly organized under the laws of the State of New York, with principal offices at 200 Holleder Parkway, Rochester, New York 14615, County of Monroe, with 8000 or more employees, thereby subjecting it to jurisdiction under Title VII of the US Code (42 USC 2000e et seq.) and Title II of the Americans with Disabilities Act (42 USC 12121 and its regulations at 28 CFR 35).

## FACTS

6. Plaintiff is 57, and after working in the automotive business for over 20 years, began working for defendant as a district manager in July 2011.

7. Plaintiff was terminated by defendant November 20, 2019.

8. During his employment with defendant plaintiff had all good evaluations and no complaints in his personnel file.

9. In September 2015 plaintiff was diagnosed with Stage III colo-rectal cancer, was out on disability from employment with defendant beginning in January 2016, and in May 2016, plaintiff was declared 100% disabled by the Social Security Administration, of which declaration defendant was duly notified.

10. Despite such declaration, plaintiff returned to work full-time in September 2016, as defendant had held plaintiff's job open for him.

11. Beginning in January 2019, plaintiff was subjected to name-calling directed at his age by his supervisor Tim Ring, who would mockingly ask plaintiff when he had to "pick up his wife at Girl Scouts", and referenced plaintiff as "John Wayne" and "old man", which references occurred in other employees' presence, and that plaintiff believes was intended to and did cause him embarrassment, and that plaintiff further believes was intended to and did cause his management authority to be undermined.

12. When opportunities for promotion arose, and for which plaintiff was qualified, plaintiff was not offered them, or even interviewed, despite being as qualified or more qualified than other younger employees who were offered or interviewed.

13. In January 2019, despite defendant's knowledge of plaintiff's health condition, plaintiff was nonetheless assigned duties requiring travel far outside his ordinary territory, putting further stress upon plaintiff's health and disability condition, which included bowel regulation difficulty resulting in inability to sit for long periods, which is exactly what the assignments outside his regular territory caused, as well as difficulty sitting through management meetings. The added assignments led to increased travel and prolonged driving up to 100 miles, that exacerbated plaintiff's disabling symptoms, and decreased his performance and earnings, which had always been rated highly by defendant's periodic performance analyses. November 6, 2019 plaintiff attempted to remind his immediate supervisor Tim Ring of his ongoing health issues, and the effect upon them by the increased travel he was being assigned. Ring feigned lack of knowledge of plaintiff's condition,

and professed dismay that he had not been notified, suggesting plaintiff had breached some duty, and acted improperly, which was not so, and that Ring knew or should have known was not so from working with plaintiff prior to, during, and after the time plaintiff was out of work due to his disabling health condition. Ring took no action upon plaintiff's concerns. If anything, he intensified efforts that plaintiff believes were intended to insure plaintiff's resignation.

14. Plaintiff believes such actions, and refusal to act upon the concerns he expressed about his health condition's effect upon his ability to perform his job, were intended to either induce his resignation, or cause sufficient damage to his performance such that he could be terminated, and that defendant was motivated in that regard, at least in part, by intent to replace plaintiff with a younger person, who would cost them less to employ, which is what they eventually did.

15. Additionally, to further such efforts, a pretext was concocted in November 2019 by which plaintiff was eventually accused of falsifying company records, which he did not do. Plaintiff was initially alleged to have mishandled a sexual harassment complaint of a female assistant manager in one of the defendant's stores within plaintiff's territory, when actually he had properly documented the matter, and had taken timely and appropriate action to abate whatever exposure the female assistant manager had to any sexual harassment.

16. Prior to learning he was being accused of wrongdoing in connection with sexual harassment matter referenced above, plaintiff corresponded via email with defendant's human resources department - copied to defendant's divisional vice-president, who would later meet with plaintiff as set forth in paragraph 19 below - indicating his belief that the remarks being directed at his age were inappropriate

and unwelcome, along with referencing his health issues.

17. Plaintiff believes his action in that regard prompted a retaliatory response from defendant. In the course of defendant's purported investigation of the sexual harassment matter, a female store manager initially made a written statement that plaintiff directed she falsify the sexual harassment complainant's time and attendance records. She resigned shortly thereafter, then recanted in a sworn writing, indicating the initial statement had been coerced by defendant.

18. Contrary to defendant's intimation/implication/pretext that plaintiff was insufficiently attentive to needs of his female subordinates, plaintiff had long been a strong advocate of hiring and promoting women in his district. Plaintiff further believes he was a target of retaliation for his practices in that regard as well, which ran afoul of what was known within the company as "the unwritten rule" that women caused problems, and should not be in store management positions. Plaintiff had heard his supervisor and others in comparable positions referencing such a practice on numerous occasions, including in connection with the sexual harassment matter referenced in paragraph 15 above. On occasion in early November 2019, plaintiff was directed by his supervisor to terminate a female assistant manager in one of the stores in his territory, and was told by his supervisor that he was breaking the unwritten rule.  Plaintiff refused, as he believed such action was not justified by any wrong the female assistant manager committed, and was discriminatory. Plaintiff was also told what is known within the company as his "head count", was over by eight managers, which just happened to be the number of females he had in management positions in his territory's stores. Plaintiff believes all the women he hired in his district that were still with the company when he was terminated, have since been terminated.

Plaintiff believes he was considered an obstacle to such actions, and that his termination cleared the way.

19. Prior to defendant's purported investigation's conclusion, plaintiff had a face to face meeting with defendant's HR rep and one of its divisional vice-presidents in Albany, New York on November 19, 2019, which plaintiff followed up in writing that included concerns regarding his working environment with Tim Ring, and his concerns about retaliation. The next day, defendant terminated plaintiff effective immediately.

20. Subsequently, plaintiff timely filed an EEOC complaint, and on September 12, 2020, plaintiff was duly issued right to sue correspondence.

## FIRST CLAIM FOR RELIEF

21. Defendant's acts, and/or its failures and refusals to act set forth in paragraphs 6-19 above, constituted a course of conduct intended to accomplish an unlawful purpose by unlawful means that were adverse to plaintiff, were retaliatory, and intended to intimidate, threaten, coerce and/or discriminate against plaintiff for the purpose of interfering with rights and/or privileges secured by the Americans with Disabilities Act for plaintiff, most notably his right to be free from discriminatory treatment resulting from his health condition, and to be free from retaliation after notifying defendant of the course of discriminatory treatment described herein, to which plaintiff was subjected resulting from his health condition. Plaintiff's actions in that regard were protected under the Act. Yet, defendant acted against him by creating a pretext for terminating him from employment.

22. As a result of defendants' unlawfully discriminatory course of conduct against plaintiff, and its retaliatory response to plaintiff's protected activity under the applicable state and federal statutes, by terminating him under pretext - which closely followed plaintiff engaging in protected activity - plaintiff suffered pecuniary and other damages, including loss of income, loss of future earnings, loss of opportunities for employment advancement along with the associated increases in salary and benefits, loss of $250,000.00 life insurance coverage for which plaintiff must now pay out of pocket, and that further required him to make penalized early withdrawal of previous employer's pension benefits, as well as emotional/psychological harm.

## SECOND CLAIM FOR RELIEF

23. By defendant's acts, and/or its failures and refusals to act set forth in paragraphs 6-19 above, defendant unlawfully discriminated against plaintiff on the basis of his age, then retaliated against plaintiff under pretext for his attempts to vindicate his rights, and for otherwise engaging in protected activity, as someone discriminated against on the basis of his age in violation of Title VII of the United States Code, causing him the damages set forth in paragraph 22 above.

## THIRD CLAIM FOR RELIEF

24. By defendant's acts, and/or its failures and refusals to act set forth in paragraphs 6-19 above, defendant unlawfully discriminated against plaintiff for opposing its discriminatory practices against hiring women in store management positions, then retaliated against plaintiff under pretext for his actions in that

regard, and for otherwise engaging in protected activity, violating Title VII of the United States Code, causing him the damages set forth in paragraph 22 above.

## FOURTH CLAIM FOR RELIEF

25. By defendant's acts, and/or its failures and refusals to act set forth in paragraphs 6-19 above, defendant discriminated against plaintiff on the basis of his age in violation of New York Human Rights Law section 296(1)(a) causing him the damages set forth in paragraph 22 above.

## FIFTH CLAIM FOR RELIEF

26. By defendant's acts, and/or its failures and refusals to act set forth in paragraphs 6-19 above, defendant discriminated against plaintiff on the basis of his disability in violation of New York Human Rights Law section 296(1)(a) causing him the damages set forth in paragraph 22 above.

## SIXTH CLAIM FOR RELIEF

27. By defendant's acts, and/or its failures and refusals to act set forth in paragraphs 6-19 above defendants violated the New York Human Rights Law section 296(1)(e), in that after plaintiff opposed defendant's unlawfully discriminatory practices regarding employment of women in store management by hiring women into store management positions in his district, defendant changed plaintiff's terms and conditions of employment in retaliation for such opposition, and causing him the damages set forth in paragraph 22 above.

## SEVENTH CLAIM FOR RELIEF

28. By defendant's acts, and/or its failures and refusals to act set forth in paragraphs 6-19 above defendants violated the New York Human Rights Law section 296(7), after plaintiff asserted his rights to a workplace free of discrimination as guaranteed under New York's Human Rights Act, and after he opposed discriminatory practices forbidden by the Act, by changing plaintiff's terms and conditions of employment, and terminating him in retaliation for his complaints about the discrimination to which he and others were subjected, causing him the damages set forth in paragraph 22 above.

## JURY TRIAL DEMAND

29. Plaintiff demands a jury hear and decide all factual issues in this matter.

THEREFORE, Plaintiff seeks the following relief against the defendant following a jury verdict in his favor granting;

A. Compensatory, presumed and future damages of $1,000,000.; and,

B. All costs, expenses, pre-judgment interest, post judgment interest, expert witness fees, and reasonable attorney's fees allowed under the Americans with Disabilities Act; and,

C. Such further legal and equitable relief deemed appropriate.

Dated: December 8, 2020
       Binghamton, New York

By: _____
DOUGLAS WALTER DRAZEN, ESQ.
Attorney for Plaintiff (Bar Roll# 302206)
2-8 Hawley Street, Suite 111
Binghamton, New York 13901

607 723 9494 (p) 607 771 6115 (f)

dwd@douglaswalterdrazen.com

VERIFICATION

_____
JOSEPH M. DOWNEY, Plaintiff

STATE OF NEW YORK   )
                    ) ss.:
COUNTY OF Schenectady )

On this 7th day of December, 2020 JOSEPH M. DOWNEY being by me duly sworn, did depose and say that they are the plaintiff above named, that they have read the foregoing, know the contents thereof, and that the same is true to their knowledge, except as to the matters therein alleged upon information and belief, and as to those matters believed to be true.

_____
Notary Public

JOSHUA I KELLEY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01KE6401758
Qualified in Schenectady County
My Commission Expires 12-16-2023