**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOSEPH M. DOWNEY,**

                                        **Plaintiff,**

        **vs.**                                        **1:20-CV-1505**
                                                       **(TJM/ML)**


**MONRO, INC.,**

                                        **Defendants.**
_____

**Thomas J. McAvoy,**
**Sr. U.S. District Judge**

                        **DECISION & ORDER**

        Before the Court is Defendant's motion for summary judgment.  See dkt. # 19. The

Court will decide the motion without oral argument.

**I.      BACKGROUND**

        This case arises out of Plaintiff Joseph M. Downey's employment with Defendant

Monro, Inc.  Plaintiff claims that Defendant discriminated against him by firing him

because of his age and disability.  He also alleges that Defendant retaliated against him

because he complained of discrimination.  Defendant denies the allegations and contends

that Plaintiff's termination came for legitimate, non-discriminatory reasons.

        Defendant Monro, Inc., is an automotive service company with retail stores in 32

states and 8200 employees.  Defendant's Statement of Material Facts (Defendant's

                                        1

Statement"), dkt. # 19-2, at ¶ 1.[1]  Plaintiff worked for Monro from July 2011 until November 2019.  Id. at ¶ 2.  Plaintiff worked as a District Manager, known formerly as a Market Manager, during that time.  Id. at ¶ 3.  In that position, Plaintiff operated 10 to 14 stores. Id. at ¶ 4.  He handled "workforce planning, hiring, training, counseling, development of store managers, and retention of employees[.]"  Id.  Plaintiff also had responsibility to ensure that "all company policies, regulations, and standards were met throughout his district."  Id. at ¶ 5.  While Plaintiff disputes that Defendant actually followed such policies, Defendant expressed a "longstanding commitment to providing equal employment opportunity to all employees."  Compare Defendant's Statement at ¶ 7 with Plaintiff's Response to Defendant's Statement of Material Facts ("Plaintiff's Response"), dkt. # 23-4, at ¶ 7.

On November 1, 2019, Shannon Meher, who reported directly to the Plaintiff, notified Plaintiff that she had been touched inappropriately by a co-worker throughout the day.  Defendant's Statement at ¶ 17.  Defendant alleges that Plaintiff failed immediately to inform Human Resources of this issue.  Instead, he informed his Zone Manager, Tim Ring, that Meher, who was an Assistant Manager, had walked off the job.  Id. at ¶ 18. Plaintiff also told Ring that Meher had company keys and left "the store without resources to close the store or to ensure all Monro assets were secured."  Id. at ¶ 18.  Plaintiff claimed to be "'collecting the facts.'"  Id.  Plaintiff asserts that he did attempt to contact Human Resources, but did so too late in the day to reach anyone.  Plaintiff's Response at

---

[1]Both parties filed the statements of material facts with citations to the record required by the local rules.  The Court will cite to the Defendant's statement for facts which are undisputed and note any disputes with references to both parties' statements.

¶ 18.  Ring responded by reminding Plaintiff that he needed to contact Human Resources. Defendant's Statement at ¶ 19.  Ring "encouraged" Plaintiff to contact Human Resources Business Partner Jill Stefanelli.  Id.  On November 6, 2019, Plaintiff let Ring know that he had involved Stefanelli in his investigation.  Id. at ¶ 20.

Plaintiff sent Stefanelli an email on November 13, 2019.  Id. at ¶ 21.  Plaintiff "described" Meher's complaint as a claim of "hands on her at [store] 28."  Id.  Plaintiff further stated that Meher had used "the complaint as 'an excuse to go home early."  Id. Plaintiff points out that the email he sent to Stefanelli claimed that "'[e]veryone says she used that excuse to go home early.'"  Plaintiff's Response at ¶ 21.  Despite Plaintiff's report, Defendant contends, he believed that Meher had a "good faith basis" for her complaint.  Defendant's Statement at ¶ 22.  Plaintiff disputes that the testimony cited by the Defendant supports this claim.  Plaintiff's Response at ¶ 22.

On November 15, 2019, Plaintiff informed Stefanelli and Ring that he intended to present Meher with "multiple disciplinary write-ups related to her alleged time and attendance issues."  Defendant's Statement at ¶ 23.  He planned to suspend her until further notice.  Id.  Stefanelli replied that she could not support disciplinary action before she reviewed the documentation.  Id. at ¶ 24.  Plaintiff agreed to provide that information. Id.  According to Defendant, Stefanelli immediately became suspicious when she saw the documentation.  Id. at ¶ 25.  She was "concerned about the integrity of the proposed written warnings and the completeness of the investigation[.]"  Id.  Plaintiff contends that Stefanelli initially agreed that Meher should be fired, but changed her mind due to "company politics, not the substance regarding Meher's time and attendance issues." Plaintiff's Response at ¶ 25.

3

Stefanelli found that all 7 written warnings had been signed by Store Manager Michelle Simmons and witnessed by Assistant Manager Michael Kinns.  Defendant's Statement at ¶ 26.  All seven documents also stated that Meher had refused to sign the warning.  Id.  Further, two of the warnings were dated before Meher's hire on October 14, 2019.  Id. at ¶ 27.  The next day, Plaintiff emailed Stefanelli two additional warnings aimed at Meyers.  Id. at ¶ 28.  The parties agree that the dates on those warnings had been "modified" to "dates after" Meher's hire.  Id.  Even the corrected warnings were inconsistent with Meher's time records on the dates allegedly issued.  Id. at ¶ 29.  One warning came for a date where Meher had not worked.  Id. at ¶ 30.  Another warning stated that Meher had left work for 2/12 hours, but time records showed no breaks during her work hours.  Id.  One of the original warnings claimed that Meher was late, arriving at 1:30 p.m.  Id. at ¶ 31.  Time records showed she clocked in at 12:30 p.m.  Id.

Because of these discrepancies, Stefanelli decided she could not rely on the documents Plaintiff provided or on his investigation.  Id. at ¶ 32.  Plaintiff responds by repeating his earlier claims that Stefanelli initially agreed that Meher should be terminated, and that she changed her mind based on company politics and not for a substantive reason.  Plaintiff's Response at ¶ 32.

Stefanelli and Regional Vice President Dan Tripoli traveled to Store 28 to investigate themselves how Plaintiff handled Meher's complaint.  Defendant's Statement at ¶ 33.  They also investigated Meher's initial complaint.  Id.  Defendant contends that the investigation revealed that Plaintiff had directed Simons "to falsify documentation for the written warnings[.]"  Id. at ¶ 34.  Defendant alleges that Plaintiff had directed Simons to have Kinns sign as a witness and to state that Meher had refused to the sign the warnings

4

"in lieu of discussing them with [Simons] and/or administering them to her."  Id.  Simons signed a statement attesting to these claims.  Id.

Plaintiff alleges that Simons signed this statement "under duress."  Plaintiff's Response at ¶¶ 34-35.  Plaintiff points to two statements from Simons dated November 23, 2019.  The first, which Simons signed, stated that when Stefanelli and Tripoli spoke with Simons about the documents she had signed, "[t]heir tone, manner, and the way in which they conducted the conversation/interrogation made me feel intimidated and I was under duress when I wrote the statement that Jill had directed me to write."  See Exh. 4 to Declaration of Joseph Downey, dkt. # 22-3.  If she had not been pressured, Simons claimed, she would have explained that Downey had asked her to "transfer her notes" about concerns over Meher's attendance "onto a warning sheet."  Id.  The information Simons transferred was true, she claimed, but she "made human error during the transfer of the dates."  Id.  Plaintiff pointed out the error and sent the documents back for correction.  Id.  Simons corrected them.  Neither she nor Plaintiff intended to deceive anyone and "all information on the warning sheet was accurate and true and the dates were fixed once the error had come to my attention."  Id.  The second document is an email Simons sent on November 23, 2019.  See Exh. 4 to Downey Declaration.  In that email, Simons "correct[ed] the dates of [her] retraction letter."  Id.  Simons explained that she had written the letter on November 22, 2019, and that she had misstated the date that Stefanelli and Tripoli came to her store.  Id.  Simons also resigned her position as store manager, claiming that the events of the previous few days had "created a hostile work environment."  Id.  Defendant points out that Simons' retraction came only after Plaintiff's termination.  Defendant's Statement at ¶ 36.

5

Defendant alleges that Stefanelli and Tripoli "learned" that Plaintiff had directed the manager who replaced Simons, Don Durkin, to "write up" Meher for violations of Monro's attendance policy that Durkin though were "'questionable.'" Id. at ¶ 37.  Plaintiff responds that Durkin's name did not come up during the meeting where Defendant terminated Plaintiff's employment, and that Durkin did not "write up" Meher for time and attendance problems.  Plaintiff's Response at ¶ 37.  Defendant alleges that Durkin told Stefanelli and Tripoli that Plaintiff "wanted him to write . . . up" Meher and then send her home "pending Human Resources review."  Defendant's Statement at ¶ 38.  Durkin further alleged that Plaintiff told him "not to say anything else or mention Plaintiff."  Id. at ¶ 39.  Plaintiff responds to these two allegations in the same way he responds to the allegation that he had directed Durkin to write up Meher for questionable violations.  See Plaintiff's Response at ¶¶ 38-39.  Those responses do not address the allegation that Plaintiff directed Durkin to "write up" Meher.  Likewise, Plaintiff's identical response to Defendant's claims that Durkin "refused to comply with Plaintiff's directives" and informed Plaintiff that if forced to "write up" Meher he would tell Meher, if asked, that the "write up" came "at Plaintiff's direction."  Compare Defendant's Statement at ¶¶ 40-41 with Plaintiff's Response at ¶¶ 40-41.  After this response, Defendant contends, "Plaintiff withdrew his directive[.]"  Id. at ¶ 42.  Plaintiff told Durkin to instead "think of anything else" he could find which Meher "should be written up."  Id.[2]

Defendant claims that Plaintiff testified that Durkin had no reason to lie about what Plaintiff told him to do.  Id. at ¶ 43.  Plaintiff points out that he also testified that Durkin

---

[2]Plaintiff repeats an identical denial here, which does not actually address the allegations in the Defendant's statement.  Plaintiff's Response at ¶ 42.

may have misunderstood what Plaintiff told him to do.  Plaintiff's Response at ¶ 43.
Plaintiff claims that he directed Durkin to document time and attendance issues.  Id.
Plaintiff contends that he told Durkin "not to falsify."  Id.  He contends that his response
about whether Durkin had reason to lie did not relate to the statements discussed above.
Id.

"[H]ighly concerned" about Plaintiff's conduct, "inconsistencies and inaccuracies in
the documents he had submitted," and "reports" from Meher and Durkin, Stefanelli and
Tripoli raised these allegations with Plaintiff during a meeting on November 19, 2019.
Defendant's Statement at ¶ 44.  Plaintiff disputes that Tripoli and Stefanelli were
concerned about anything but firing him.  Plaintiff's Response at ¶ 44.  He contends that
Tripoli and Stefanelli did not even raise Durkin's name during the meeting.  Id.

The parties agree that Plaintiff admitted that he instructed Simons to prepare a
written warning for Meher.  Defendant's Statement at ¶ 45.  Defendant claims that Plaintiff
"admits that he abdicated his responsibilities with respect to the investigation into" the
"harassment complaint and instead delegated" that responsibility to Simons.  Id. at ¶ 46.
Plaintiff responds that the claim that he "abdicated" his responsibilities is not supported by
the record.  Plaintiff's Response at ¶ 46.  Plaintiff contends that he only admitted that
Simons gathered one of the statements in the investigation, and that he did not admit to
"abdicating" his role in the investigation.  Id.  The Court notes that whether Defendant
"abdicated" his role is an opinion.  The role that Plaintiff actually played in investigating the
alleged sexual harassment can be determined by examining the facts.

After the November 19, 2019 meeting, Plaintiff sent Stefanelli and Tripoli a letter.
Defendant's Statement at ¶ 47.  Defendant alleges that the letter offered a summary of the

meeting and Plaintiff's opinion of that meeting.  Id.  Defendant contends that the letter

admitted that "'given the timing of the sexual harassment allegations it appeared as

though" the write-ups concerning Meher had been "'coached.'"  Id.  Plaintiff responds that

he also informed Tripoli and Stefanelli that the write-ups were "appropriate."  Plaintiff's

Response at ¶ 47.  Tripoli and Stefanelli did not accept Plaintiff's explanation and instead

decided that Plaintiff had directed that the discipline against Meher be falsified in an effort

to have her fired.  Defendant's Statement at ¶ 48.  Plaintiff denies that this alleged

falsification was the reason for his termination.  Plaintiff's Response at ¶ 48.

After their investigation, Tripoli and Stefanelli recommended that Plaintiff be fired.

Defendant's Statement at ¶ 50.  They made this recommendation to Donna Maxwell,

Senior Vice President and Chief Human Resources Officer.  Id.  She had final decision-

making power in this respect.  Id.  Maxwell agreed that Plaintiff should be terminated.  Id.

Plaintiff disputes that any recommendation to terminate him came because of the results

of Stefanelli and Tripoli's investigation.  Plaintiff's Response at ¶ 50.  Plaintiff was

terminated on November 20, 2019.  Id. at ¶ 51.  Defendant states that the reason for the

termination was "gross misconduct and . . . failure to execute . . . managerial

responsibilities[.]"  Id.  Plaintiff denies that the stated reason for the termination was the

real reason.  Plaintiff's Response at ¶ 51.

Ring became Plaintiff's Zone Manager on October 27, 2019.  Defendant's

Statement at ¶ 52.  Zone Manager was the position directly above the District Manager

position that Plaintiff held.  Id.  Defendant claims that Plaintiff previously stated he enjoyed

his working relationship with Ring.  Id. at ¶ 53.  Plaintiff disputes this claim.  Plaintiff's

Response at ¶ 53.  The parties both point to an exhibit to a declaration produced by

8

Tripoli.  See Exh. C to Tripoli Declaration, dkt. # 19-5.  That exhibit is an email from

Plaintiff to Donna Maxwell dated November 17, 2019.  Id.  Plaintiff begins his email by

stating that the email's purpose was "to report some serious issues regarding" himself and

his "supervisor and age discrimination."  Id.  "Tim Ring," Plaintiff reported, "refers to me in

public as John Wayne (an old gunslinger)."  Id.  Plaintiff relayed a dispute that he had with

Ring over staffing and terminating an employee.  Id.  He further stated that "I want a

complete cease and desist from Tim Ring."  Id.  "I respect him," Plaintiff stated, "I think he

is a smart good zone manager[.]"  Id.  At the same time, however, Plaintiff complained that

he "[did] not like the following: [b]eing spoken down to, like I have not been doing this

same work since 1988"; "[b]eing forced to switch so fast to everything electronic and

referring to my age because I have not been able to comply with these changes as fast,

not due to my age, but because my laptop crashed and I have an old one I'm using till I

can afford a new one and the office apps to purchase to maintain electronic reports[.]"  Id.

Plaintiff also complained about being directed to use an IPad that had never worked

properly, despite Plaintiff's efforts to get IT assistance.  Id.  Plaintiff also contended that

he had "lost bonus" because of changes in store assignments and personnel.  Id.  Other

stores he oversaw, however, were "having record years."  Id.  Plaintiff declared that "I want

the respect I deserve in the position I hold without my name being related to age" and

"[w]ithout being talked down to" and "[w]ithout giving mixed messages about personnel[.]"

Id.  Plaintiff then explained his position on Meher's situation.  Id.  He explained that "I like

Tim [Ring], I can work with him, but I have also caught him in numerous lies."  Id.  After

further explaining his efforts to produce work required in a timely fashion despite

technological and other problems, Plaintiff related that "I do not and will not tolerate any

form of retaliation from Tim for me reporting this unethical and demeaning way of handling our Teammates, or any other comments of me being old and aged/I'm 56 not 86." Id. Defendant points out that this email came after Stefanelli and Tripoli had begun their investigation.  Defendant's Statement at ¶ 54.  Plaintiff points out that he had not received formal notice of the investigation when he wrote the email.  Plaintiff's Response at ¶ 54.

Defendant notes that Plaintiff had not had any contact with Ring for weeks before sending the email.  Defendant's Statement at ¶ 55.  Plaintiff does not dispute that he had not communicated with Ring for that period, but contends that he explained during his deposition that he sent the email when he did because "he finally just got fed up with" Ring's alleged mistreatment of Plaintiff because of his age.  Plaintiff's Response at ¶ 55. The parties agree that Tripoli was not aware of any age-related complaints raised by Plaintiff before this time.  Defendant's Statement at ¶ 56.

Plaintiff has no evidence that Stefanelli saw the email he sent Maxwell, "who was responsible for initially raising concerns over Plaintiff's handling of" the complaint of sexual harassment Meher made.  Id. at ¶ 57.  Plaintiff does not address that claim, but responds by alleging that he "questioned Tripoli about whether Ring was involved[.]" Plaintiff's Response at ¶ 57.  According to Plaintiff, Tripoli turned "beet red," at this question, "and said nothing, neither did Stefanelli."  Id.  Plaintiff points out that he "memorialized what was discussed" at the November 19, 2019 meeting and sent a copy to Ring and Stefanelli. Id.  That document referenced the November 17, 2019 email.  Id.  Plaintiff "invited" Tripoli and Stefanelli "to correct anything he said was inaccurate or misinterpreted."  Id.  They did not respond.  Id.

The record before the Court contains a copy of that memorandum.  See Exh. M to

10

Stefanelli Declaration, dkt. # 19-4.  The memorandum is not dated, though Plaintiff opens by thanking Stefanelli and Tripoli for meeting with him "today."  Id.  He suggests that "I thought it would be helpful for us to have a summary of today's meeting to ensure that we are all on the same page with expectations and next steps."  Id.  Plaintiff first relates that his "email regarding concerns with Tim was shared with him and interpreted as an attempt to mitigate possible adverse outcomes for myself due to the situation" with Meher.  Id.  Plaintiff claims that the parties determined that future concerns about supervision would "not be forwarded to the supervisor in question," but would instead "be discussed with those involved with anonymity of the complainant and the situation handled as seen fit."  Id.  Plaintiff further claimed that he "in no way had the impression that I was in jeopardy of any adverse actions at the time I raised my concerns," since he had handled the potential sexual harassment as company policy required.  Id.  Plaintiff had simply hoped "to improve the current working environment with" Ring.  Id.  Plaintiff also represented that "[m]y concerns regarding Tim will be discussed and addressed," though Plaintiff remained "concerned about retaliation and would like to see some assurances that this will not be the case."  Id.  Plaintiff also discussed the issue of his efforts at disciplining Meher.  Id.  He attempted to clarify the process for issuing employee discipline notices.  Id.

At the time that Defendant fired Plaintiff, Monro had 119 active "Field Managers." Defendant's Statement at ¶ 58.  "Field Managers" include "District Managers, Zone Managers, and Regional Vice Presidents."  Id.  Of those employees, fourteen were Plaintiff's age or older.  Id.  Plaintiff was not replaced by a younger District Manager.  Id. at ¶ 59.  Plaintiff contends that his district "was dissolved."  Plaintiff's Response at ¶ 59. Plaintiff could not identify more than one manager who had been replaced by a younger

manager.  Defendant's Statement at ¶ 60.  Plaintiff testified that he would need more

records from the company to answer that question.  Plaintiff's Response at ¶ 60.  Plaintiff

also could not point to another employee who faced age-based name calling from Ring.

Defendant's Statement at ¶ 61.  Plaintiff contends that such name calling was a "common

practice" for Ring.  Plaintiff's Response at ¶ 61.  Defendant contends that Plaintiff has no

evidence that Ring was involved in his termination.  Defendant's Statement at ¶ 62.

Plaintiff responds that he testified that "he believed Ring was involved as a result of their

November 6, 2019 conversation, but could not show it without looking at company

records."  Plaintiff's Response at ¶ 62.

Plaintiff requested that Monro grant him a leave of absence to undergo cancer

treatment in January 2016.  Defendant's Statement at ¶ 63.  Plaintiff received the

requested leave.  Id.  Plaintiff testified that Monro did a "great" job in handling his leave

and "took care of everything" so Plaintiff could "concentrate on trying to beat cancer."  Id.

at ¶ 64.  Defendant contends that when Plaintiff returned to work he "had no medical

restrictions and was fully capable of returning to full duty."  Id. at ¶ 65.  Plaintiff claims he

notified management of "limitations he had with sitting for extended time periods, and

other issues associated with his condition."  Plaintiff's Response at ¶ 65.  At the same

time, Plaintiff admits that his supervisors "always accommodated any acts he took to deal

with [his] alleged complications."  Defendant's Statement at ¶ 66.  Those accommodations

included permitting Plaintiff "to take breaks while traveling to additional stores assigned to

his district."  Id. at ¶ 67.  When Plaintiff's health issues got worse, he requested to have

the additional stores removed from his route.  Id. at ¶ 68.  Defendant removed the

additional stores after this request.  Id.  Plaintiff responds that though he did not request

the transfer of the stores, he agreed to the transfer "because of the strain it was putting on his health condition." Plaintiff's Response at ¶ 68.

Plaintiff admits that he "suffered no adverse actions as a result of taking disability leave." Defendant's Statement at ¶ 69. Plaintiff claims that Ring once told him that Plaintiff needed to provide a month's notice before taking another disability leave. Id. at ¶ 70. Defendant claims that Plaintiff "could not recall any specific instances in which he complained about adverse treatment related to his disability." Id. at ¶ 71. Plaintiff responds that he responded to a question on the issue by saying that "he could not recall without access to his emails." Plaintiff's Response at ¶ 71. Plaintiff also contends that "the four extra stores assigned to him requiring extra travel that affected his condition was made by Ring and Tripoli despite their knowledge of his condition and its impact on Plaintiff's ability to sit for extended periods." Id.

Defendant further contends that Plaintiff agreed that an alleged decrease in earnings he suffered came from a change in pay structure for all Monro managers, and not to him specifically. Defendant's Statement at ¶ 72. Plaintiff contends that the portion of his testimony cited on that issue references store managers, and that he was not a store manager but a district manager. Plaintiff's Response at ¶ 72. Defendant further contends that Plaintiff has admitted that reductions to his bonus before he was fired nothing to do with Plaintiff's age or disability. Defendant's Statement at ¶ 72. Plaintiff agrees that a new bonus program applied to him and would limit his pay, but contends that the cited discussion did not address how his disability influenced decisions about his pay. Plaintiff's Response at ¶ 73.

Defendant alleges that no evidence exists to show that Ring, "the only individual

Plaintiff claims voiced a concern for his disability," played a role in Plaintiff's termination. Defendant's Statement at ¶ 74.  Plaintiff contends that he testified at his deposition that he needed access to company records to show that Ring played a role in his firing.  Plaintiff's Response at ¶ 74.  Plaintiff, despite having engaged in discovery, cites to no such records. He does argue that, when he asked Tripoli about Ring's role, "Tripoli turned 'beet red' and said nothing."  Id.  He also points to the memorandum discussed above, which Plaintiff claims discussed Ring's role in his firing.  Id.  Plaintiff contends that Ring and Tripoli did not dispute the claims he made in that document, though he asked them.  Id.  Plaintiff offers the same response to Defendant's statement that "[t]here is no evidence indicating that . . . Ring consulted" with either Stefanelli or Tripoli before they fired Plaintiff. Defendant's Statement at ¶ 75; Plaintiff's Response at ¶ 75.

Plaintiff claims that he "periodically objected to" an alleged "unwritten rule" that women should not hold management positions at Monro.  Defendant's Statement at ¶ 76. According to Defendant, Plaintiff admitted that he had not faced any disciplinary action as a result of these alleged objections.  Id. at ¶ 77.  Plaintiff responds that he testified that he was "not aware of" such disciplinary action.  Plaintiff's Response at ¶ 77.  Defendant also contends that Plaintiff agreed "that there is no evidence" that "any of the women he hired were terminated from Monro."  Id. at ¶ 78.  Plaintiff "disputes" this statement, contending that he actually testified that he had no evidence of such terminations, "but that he knew some of the women, and at least one was not there anymore, but that he was not in contact with company employees[.]" Plaintiff's Response at ¶ 78.  He points to a declaration from Marcel Bauman, who worked at Monro.  See Marcel Bauman Declaration, dkt. # 22-2.  Bauman avers that "after Joe got fired, females in the district

14

were getting let go left and right." Id. at ¶ 4.  He points to three women, including Simons, who "were good employees." Id.  He also points to a statement in his own declaration, but that statement addresses younger managers he claims were hired, and not women.  See Downey Declaration, dkt. # 22-3, at ¶ 32,

Plaintiff began receiving Social Security disability benefits in December 2019. Defendant's Statement at ¶ 79.  Plaintiff points out that such benefits were not new benefits, but a reinstatement of benefits he had previously obtained.  Plaintiff's Response at ¶ 79.  Plaintiff agrees that he has not sought or obtained other employment since Monro terminated him.  Defendant's Statement at ¶ 80.[3]

Plaintiff's Complaint raises seven counts.  See dkt. # 1.  Count 1 alleges that Defendant discriminated against him by firing him and retaliated against him because of his disability in violation of the Americans with Disabilities Act ("ADA").   Count Two alleges that Defendant discriminated against and retaliated against Plaintiff because of his age in violation of "Title VII of the United States Code."  Count Three alleges that Defendant

_____

[3]Plaintiff has offered additional material facts with citations to the record in his response to Plaintiff's statement.  See Plaintiff's Statement of Additional Material Facts, dkt. # 22-4 at ¶¶ 1-16.  Some of those facts are referenced in Plaintiff's responses discussed above.  Others provide additional support for Plaintiff's contentions discussed above, and others provide additional support for his claims that his treatment of Meher followed company policy.  The Court will refer to the evidence that Plaintiff cites as appropriate in deciding this matter.  The Court notes that the Local Rules permit a party's response to a moving party's statement of material fact to "set forth any assertions that the opposing party contends are in dispute in a short concise Statement of Additional Material Facts in Dispute, containing separately numbered paragraphs."  N.Y.N.D. L.R. 56.1(b). The rules permit the moving party to file a separate response to such additional statements or to address such statements in a reply memorandum of law.  The Court notes that this portion of the rule, in contrast to the section addressing the moving party's statement of material facts, does not contain any requirement that the Court accept properly supported additional facts as true if the moving party does not respond to them.

retaliated against Plaintiff for opposing discrimination against women in violation of Title VII.  Count Four alleges discrimination on the basis of Plaintiff's age in violation of Section 296(1)(a) of the New York Human Rights Law ("NYSHRL").  Count Five alleges disability discrimination in violation of the Section 296(1)(a) of the NYSHRL.  Count Six alleges retaliation for Plaintiff's opposition to Defendant's discrimination against women in employment in violation of the Section 296(1)(c) of the NYSHRL.  Count Seven claims discrimination and retaliation under Section 296(7) of he NYSHRL

Defendant answered the Complaint and the parties engaged in discovery.  At the close of discovery, Defendant filed the instant motion.  The parties then briefed the issues, bringing the case to its present posture.

## II.    LEGAL STANDARD

Defendant seeks summary judgment.  It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant is able to

establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

## III.   ANALYSIS

Defendant seeks summary judgment on several grounds.  The Court will address each in turn, as appropriate.

### A.   Title VII Claims

Defendant first argues that the Court must dismiss any Title VII claims that Plaintiff raises.  Defendant contends that Title VII prohibits discrimination and retaliation on certain bases, which do not include discrimination on the basis of age or disability.  Since the only discrimination Plaintiff claims is based on age and disability, Defendant insist that Plaintiff cannot prevail on his Title VII claims.  Plaintiff has not responded to this argument.[4]

----

[4]As the Court's decision here will make clear, Plaintiff's response focuses almost solely on whether Defendant's stated reasons for firing him were pretext for Defendant's real reasons for the termination.  "Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." Taylor v. City of New York, 269 F.Supp. 68, 75 (E.D.N.Y. 2003).  Here, the Plaintiff argues that he has evidence to support claims of employment discrimination on the basis of age and disability, but does not offer any argument that he could raise such claims under Title VII.  As the Court will explain, he could not raise such claims even if he continued to maintain them.  The Court does not consider Plaintiff to have abandoned his general claims of discrimination, however, and

17

Title VII of the Civil Rights Act of 1965 provides that "it shall be an unlawful employment practice for an employer--(1) to fail to hire or to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1).  Federal law also provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . for opposing any practice made an unlawful employment practice this title[.]" 42 U.S.C. § 2000e-3(a).  "Title VII prohibits discrimination on the basis of race, color, religion, sex or national origin and retaliation against people who complain about discrimination."  Mathirampuzha v. Potter, 548 F.3d 70, 74 (2d Cir. 2008).

Title VII, does not, however, include protections for discrimination on the basis of age or disability.  Federal courts have repeatedly reached this conclusion.  See, e.g., Canonica v. United States, 41 Fed. Cl. 516, 522 (Ct. Fed. Cl. 1998) ("Title VII does not prohibit discrimination on the basis of age."); Bostanci v. New Jersey City Univ., 476 Fed. Appx. 499, 501 (3d Cir. 2012) ("Age is not a protected class under Title VII."); Marrero v. Schindler Elevator Corp., 494 F.Supp.2d 102, 111 (D. P.R. 2007) (dismissing Title VII age-discrimination claim because Title VII does not apply to such claims); Carlisle v. St. Charles Sch. Dist., 507 F.Supp.2d 1018, 1028 (E.D. Mo. 2007) ("Age discrimination claims are not actionable under Title VII and therefore defendant's motion for summary judgment as to this claim is properly granted."); Chiesa v. New York State Dep't of Labor, 638 F.Supp.2d 316, 324 (N.D.N.Y. 2009) (granting summary judgment on Title VII disability discrimination claim because Title VII does not prohibit discrimination on that basis); Lewis

---

will address them under the standards available for such claims.

v. New York City Police Dep't, 908 F.Supp.2d 313, 330 (E.D.N.Y. 2012) (granting summary judgment on Title VII claim because plaintiff alleged discrimination based on disability, which Title VII does not prohibit).

Because Plaintiff's claims of discrimination based on disability and age do not allege discrimination on any basis protected by Title VII, the Court will grant the motion in this respect.

## B.    Anti-discrimination Claims

Defendant next argues that Plaintiff lacks sufficient evidence to support his claims for age discrimination and disability discrimination under any relevant statute.  After discussing the prevailing legal standard, the Court will address the age discrimination and disability discrimination claims in turn.  As a preliminary matter, the Court notes that the Second Circuit Court of Appeals "has 'repeatedly expressed the need for caution about granting summary judgment to an employer in a discrimination case where . . . the merits turn on a dispute as to the employer's intent." Tolbert v. Smith, 790 F.3d 427, 434 (2d Cir. 2015) (quoting Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008)).  Still, "'the salutory purposes of summary judgment–avoiding protracted and harassing trials–apply no less to discrimination cases than to . . . other areas of litigation.'" Id. (quoting Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000)).

### i.    Legal Standard

As a preliminary matter, the Court notes that age discrimination claims brought under New York and federal law apply the same standard.  Wanamaker v. Columbian Rope Co., 108 F.3d 462, 467 (2d Cir. 1997).  Likewise, "[a] claim of disability discrimination under the New York State Human Rights Law, N.Y. Exec. Law §§ 290-301,

is governed by the same legal standards as govern federal ADA claims." Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 n.3 (2d Cir. 2006).

Courts interpreting claims of employment discrimination under the ADA and anti-age discrimination laws follow the burden-shifting framework set out by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Kovco v. Rockbestos-Surprenant Cable Corp., 834 F.3d 128, 136 (2d Cir. 2016). Under this framework, the "plaintiff must initially come forward with facts sufficient to establish a *prima facie* case that his discharge was effected under circumstances giving rise to an inference of discrimination." Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 52 (2d Cir. 1998). Once plaintiff meets his burden, "the burden of production then shifts to the defendant, who must proffer a legitimate, non-discriminatory reason for its actions in order to rebut the presumption of unlawful discrimination" created when plaintiff makes out a prima facie case. Id. If the employer makes out this burden to "articulate an explanation that, if true, would connote lawful behavior," the burden returns to "the plaintiff to persuade the factfinder that the employer's proffered explanation is merely a pretext for unlawful discrimination." Id.

To "establish a prima facie case of discrimination under the ADA, a plaintiff must show (a) that his employer is subject to the ADA; (b) that he is disabled within the meaning of the ADA or perceived to be so by his employer; (c) that he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (d) that he suffered an adverse employment action because his disability." Brady v. Wal-Mart Stores, 531 F.3d 127, 134 (2d Cir. 2008).

"To establish a *prima facie* case of age discrimination, a plaintiff must show four

20

things: (1) he is a member of the protected class; (2) he is qualified for his position; (3) he has suffered an adverse-employment action; and (4) the circumstances surrounding that action give rise to an inference of age discrimination." Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001). "A plaintiff's burden of establishing a *prima facie* case is *de minimis*." Id. at 467. That burden "is neither 'onerous,' nor 'intended to be rigid, mechanized or ritualistic.'" Id. (quoting, in turn, Fisher v. Vassar College, 114 F.3d 1332, 1335 (2d Cir. 1997) and Meiri v. Dacon, 759 F.2d 989, 996 (2d Cir. 1985)).

### ii.   Disability Discrimination

Defendant argues that Plaintiff cannot establish a *prima facie* case of disability discrimination. Defendant first contends that Plaintiff has not put forth evidence that he was disabled within the meaning of the ADA at the time of his firing. Plaintiff had returned to work after his previous illness without restriction in September 2016, and Defendant contends that nothing in the record supports a finding that he suffered from any other physical or mental impairment after that date. Defendant had in the past granted accommodations for Plaintiff's job difficulties related to his cancer, and Defendant contends that Plaintiff cannot point to any other conduct by supervisors or decision makers that indicates an animus because of his disability. Plaintiff's brief in opposition points to no evidence that indicates that Defendant fired Plaintiff because of his disability. Plaintiff must here put forth evidence that his disability was the "but for" cause of his firing. Natofsky v .City of New York, 921 F.3d 337, 349 (2d Cir. 2019).

No evidence indicates that Defendant failed to accommodate Plaintiff or

discriminated against Plaintiff because of his health condition before his termination.[5]

Indeed, the evidence related above indicates that Defendant permitted Plaintiff a leave of

absence to treat his cancer and changed his assignments to accommodate health

conditions after Plaintiff returned to work.  Plaintiff's own testimony indicates that he had

no complaints about Defendant's willingness to accommodate him during his cancer

treatment, and that he had returned to a normal work schedule before his termination.

Plaintiff provides a declaration describing his medical condition.  See Plaintiff's

Declaration, dkt. # 22-3.  He relates that he received a diagnosis of Stage 3 colo-rectal

cancer in September 2015.  Id. at ¶ 28.  Plaintiff "went out on disability in January 2016."

---

[5]Plaintiff offers no argument that he suffered from a disability or was perceived as suffering from a disability at the time of his termination.  "For purposes of determining whether an ADA plaintiff is a 'qualified individual with a disability,' the ADA defines 'disability' to include, *inter alia*, 'a physical or mental impairment that substantially limits one or more major life activities.'" Hamilton v. Westchester Cty., 3 F.4th 86, 92 (2d Cir. 2021) (quoting Woolf v. Strada, 949 F.3d 89, 93 (2d Cir. 2020) (in turn citing 42 U.S.C. § 12102(1)(A)).  While courts formerly interpreted "disability" in a narrow fashion, Congress amended the ADA in 2008 to "[broaden] the definition of 'disability'" in the statute.  Id.  The purpose of that amendment "'was to overrule the Supreme Court's arguably narrow interpretation of what constitutes an ADA-qualifying disability as set forth in *Sutton v. United Air Lines, Inc.,* and *Toyota Motor Mfg., Ky, Inc. v. Williams*, and to make clear that the substantial-limitation requirement in the definition of 'disability' is not an exacting one.'" Id. (quoting Woolf, 949 F.3d at 94).  To broaden the reach of the statue, the ADA amendments provide "that '[t]he term substantially limits shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA,' and 'is not meant to be a demanding standard.'" Id. (quoting 28 C.F.R. § 35.108(d)(1)(i)).  The amendments also directed courts that "the term 'substantially limits' is to be interpreted and applied to require a lower degree of functional limitation than the standard required prior to the" amendments.  Id.  Plaintiff has not even attempted to explain his limitations and how they meet this standard, nor has he explained the type of ADA claim he seeks to make.  He does not explain whether Defendant allegedly failed to accommodate him because of some disability from which he suffered or whether Defendant terminated him because of his disability.  The Court declines to examine the record and attempt to divine what arguments Plaintiff, who is represented by counsel, may have been able to make.

Id.  Defendant kept Plaintiff's job open for ten months.  Id.  Plaintiff received Social

Security Disability in June 2016 and notified Defendant of those payments.  Id.  These

payments from Social Security reduced the amount of long-term disability insurance for

which Defendant and Defendant's disability insurer were responsible.  Id.  Plaintiff's

condition "caused bowel regulation difficulty" that "impede[d] [his] ability to sit through

meetings[.]" Id. at ¶ 29.  Ring and Tripoli attended those meetings and saw that Plaintiff

often had to "get up and leave[.]" Id.  Plaintiff also notified a Sam Senuk, a senior Vice

President, about this situation.  Id.  Plaintiff was also hospitalized for complications of his

condition in January 2019.  Id.  Both Ring and Tripoli were aware of his condition.  Id.

Despite this knowledge, Ring and Tripoli assigned Plaintiff several stores in

geographic locations that increased the amount of tie Plaintiff had to drive.  Id. at ¶ 30.

These assignments caused "increased travel requiring prolonged driving–sometimes 80-

100 miles."  Id.  These new assignments "exacerbated disabling symptoms, and

decreased [Plaintiff's] performance and earnings."  Id.  Plaintiff contends that "those

actions were taken to either induce [his] resignation," or harm his performance enough to

allow his termination.  Id.  Plaintiff discussed the four extra stores he had recently been

assigned in a phone conversation with Ring on November 6, 2019.  Id. at ¶ 13.  Ring told

Plaintiff that the four stores "would be assigned to another District Manager[.]" Id.  Plaintiff

told Ring he "favor[ed]" the idea, "because of the strain" the extra stores were "putting on

[his] health condition."  Id.  Ring, Plaintiff reports, became angry at this, "shouting that

[Plaintiff] had to give him a warning about going out on disability[.]" Id.  Plaintiff became

perplexed at this, because Plaintiff had not thought that agreeing to fewer stores

represented a desire to go out on disability.  Id.  Plaintiff suspected that Ring had hoped to

provoke him in a way that would provide a pretext for discipline or termination.

Plaintiff grounds his claims for disability discrimination in Defendant's reaction to his cancer diagnosis. He admits that Defendant accommodated his illness by holding his job open while he received disability payments. Plaintiff also admits that Defendant altered his area of supervision when he complained about the stress of driving to cover particular stores. A reasonable juror could not draw an inference of discrimination from such conduct. The only evidence before the Court which could lead to an adverse inference regarding Defendant's position about Plaintiff's cancer diagnosis comes from Ring's alleged statement to Plaintiff that Plaintiff needed to warn Ring before taking another leave of absence due to a health condition. This statement does not amount to a threat to fire Plaintiff if he became sick again, and nothing indicates that Defendant took any action in anticipation of Plaintiff suffering a future illness. Plaintiff claims that Ring hoped to provoke him; but admits that Ring's effort failed. Such evidence does not support an inference of discrimination.

No reasonable juror could conclude that Defendant terminated Plaintiff because of his disability. While a reasonable juror could perhaps conclude that Ring warned Plaintiff not to seek an accommodation in the future, no evidence before the Court indicates that Plaintiff had requested an accommodation or intended to request an accommodation. The Court finds that no evidence supports Plaintiff's *prima facie* ADA claim and will grant the motion in that respect. Because the Court adjudicates NYSHRL claims on the same standard, the Court will also grant the motion with respect to any NYSHRL disability discrimination claims.

### iii.    Age Discrimination

With respect to age discrimination, Defendant argues that Plaintiff has failed to establish his *prima facie* case because Plaintiff has failed to put forth any evidence that would permit a jury to make an inference of age discrimination.  Plaintiff has offered, Defendant claims, only evidence of a few stray remarks by Ring about Plaintiff's age.  That evidence, according to Defendant, offers no nexus between Ring's comments and Plaintiff's firing.  Ring was not a decision-maker when it came to Plaintiff's firing.

"It well-settled that an inference of discriminatory intent may be derived from a variety of circumstances, including, but not limited to: 'the employer's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position; or the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" Leibowitz v. Cornell Univ., 584 F.3d 487, 502 (2d Cir. 2009) (quoting Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994)).  "[A] claimant bringing suit under the ADEA must demonstrate that age was not just a motivating factor behind the adverse action but rather the 'but-for' cause of it."  Id. at 498 n.2 (quoting Gross v. FBI, Financial Services, Inc., 129 S.Ct. 2343, 2350-51 (2009)).  A plaintiff cannot prevail on an ADEA claim by "show[ing] 'that age was simply a motivating factor' in the employer's adverse action."  Lively v. WAFRA Inv. Advisory Grp., Inc., 6 F.4th 293, 303 (2d Cir. 2021) (quoting Gross, 557 U.S. at 174).

As evidence of age discrimination, Plaintiff alleges in his declaration in opposition to the Defendant's motion that "I was subjected to name calling and jokes about my age."  Plaintiff's Declaration, dkt. # 22-3, at ¶ 31, Ring referred to Plaintiff as "'old man', and

25

'John Wayne.'" Id.  Ring "asked me when I had to 'pick my wife up from Girl Scouts.'" Id.
Ring also "poked fun" and Plaintiff's "computer skills."  "None of" those comments, Plaintiff
declares, were "welcome."  Id.  Plaintiff hoped that his good performance would be
recognized, and he would be promoted.  Id.  He would then no longer have to answer to
Ring.  Id.  When Plaintiff had chances for promotion with Defendant, however, "I was not
offered or interviewed, despite being as qualified, or more qualified than other younger
employees who were offered positions or interviewed for them."  Id. at ¶ 32.  Plaintiff
cannot state "the exact number of people [his] age that held [his] position," though he
"believe[s] the proportion is small."  Id.  Plaintiff felt qualified to serve as zone manager,
but did not receive even an interview.  Id.  Others, Dan Tripoli, Jamie Jenison, George
Ruth, Bill Burnett, and William Carver, "were all either interviewed, promoted, or promoted
without interview from 2013-early 2019."  Id.

The Plaintiff thus points to two types of evidence that he contends support an
inference of age discrimination.  First, Plaintiff points to comments from Ring concerning
his age and his computer abilities.  Plaintiff implies that the comments about his technical
skill also criticized his age.  These comments were made by Ring, Plaintiff's direct
supervisor.  Plaintiff does not describe the comments as pervasive or constant, and the
comments do not directly reference age.  These comments represent stray age-related
comments.  "Stray age-related remarks are insufficient to raise an inference of
discriminatory motive unless they '(1) [were] made repeatedly, (2) drew a direct link
between [discriminatory] stereotypes and the adverse employment decision, and (3) were
made by supervisors who played a substantial role in the decision to terminate.'" Id.
(quoting Naumovski v. Norris, 934 F.3d 200, 216 n. 47 (2d Cir. 2019)).  The comments as

26

described were not made repeatedly.   Plaintiff also fails to point to any direct link between those comments and the decision to terminate him or not promote him.  Finally, Plaintiff alleges that Tripoli and Stefanelli made the decision to terminate him, but fails to allege any connection between them and the age-related remarks.  A jury could not use this evidence to draw an inference of age discrimination.

Plaintiff has also failed to produce evidence a jury could use to conclude that Defendant's failure to promote him and promote others provides an inference of age discrimination.  Plaintiff does not provide any specific information about these alleged failures to promote.  He offers no evidence of specific promotions that he sought.  He provides no information of the dates when he sought those jobs, the locations of those jobs, the other candidates for those jobs, and Defendant's explanations for failing to promote him.  He also provides no information except the names of others who received promotions.  He does not describe in any detail their qualifications.  He also does not provide their ages.  Plaintiff has not offered information sufficient to create an issue of fact that would permit a reasonable juror to draw an inference that age was the but-for reason for Defendant's failure to promote him.  While Plaintiff's burden to demonstrate discrimination when it comes to his *prima facie* case is not a high one, Plaintiff does have a burden.  Without any evidence beyond his speculation, he cannot meet that burden.  The Court also finds that Plaintiff has not pointed to any evidence that indicates that Ring played a role in his firing, further undermining his claim that age discrimination caused his termination.

The Court therefore finds that Plaintiff has failed to make out a *prima facie* case for age discrimination and will grant the Defendant's motion in this respect as well.  Since, as

the Court has explained, the legal standard for age discrimination under the NYSHRL is the same as under federal law, the Court will grant the motion on the state-law claims as well.

### iv.    Retaliation

Defendant next argues that the Court should dismiss any retaliation claims that Plaintiff raises.  Defendant contends that Plaintiff claims retaliation for engaging in three types of protected activities: complaints about discrimination against women, requests for accommodations for his disability, and complaints about Ring's age discrimination against him.  Defendant argues that Plaintiff cannot make out a prima facie to support any of those claims.

Courts evaluate retaliation claims using the same framework whether the claims are brought under Title VII or the ADA.  Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999).  "To establish a *prima facie* case of unlawful retaliation, a plaintiff must show '(1) that [he] participated in a protected activity, (2) that [he] suffered an adverse employment action, and (3) that there was a causal connection between [his] engaging in the protected activity and the adverse employment action.'" Rasmy v. Marriot Int'l, Inc., 952 F.3d 379, 391 (2d Cir. 2020) (quoting Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010)).  Protected activity occurs whether or not the plaintiff complains about conduct that is actually illegal "so long as he can establish that he possessed a 'good faith, reasonable belief that the underlying challenged actions of the employer violated that law.'" Sarno, 183 F.3d at 159 (quoting Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998)).  Protected activity can include the "filing of

formal charges of discrimination," but such activity can also include "informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir. 1990). "A plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful 'so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law.'" Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (quoting Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999)).

### a.    Prima Facie Case

Plaintiff appears to allege retaliation on three bases: complaints about sex discrimination, disability discrimination, and age discrimination.  The Court will address each in turn.

### 1.    Sex Discrimination

Defendant first seeks dismissal of any retaliation claims based on Plaintiff's purported reporting of discrimination based on sex.  Defendant argues that Plaintiff's claims of complaining about such discrimination are vague and unverified, that Plaintiff complained only to Ring, who did not take any adverse employment actions, and that Plaintiff has altogether failed to point to any retaliatory action.  Defendant argues that on this basis Plaintiff has failed to make out a prima facie case.  Plaintiff does not offer any particular argument in his briefing about whether he opposed any discrimination on the

basis of sex.

The Court will grant the motion in this respect. While, as explained above, Plaintiff offers some evidence that he complained about the Defendant's treatment of women, he does not offer any specific evidence that he made any complaints to the people who decided to terminate his employment or offer any specifics at all that he actually made such complaints. Plaintiff just offers a general allegation that he had often complained about such discrimination. Such evidence is too vague to demonstrate that the employer was aware of a particular complaint. Plaintiff has thus failed to produce evidence a jury could use to find that the Defendant's decision makers were even aware that he engaged in the protected activity. Without some specifics about actual complaints, no reasonable juror could find that Plaintiff has established his prima facie case in this respect. Plaintiff's vague claim that he at various times complained about how Defendant treated women, which lacks any effort to describe the specifics of the claims or when he made them, is not sufficient for a reasonable jury to find protected activity.

Even assuming that Plaintiff has established that he offered complaints about discrimination towards women, Plaintiff has not produced evidence by which a reasonable juror could find that those complaints caused the adverse employment action in question. To establish the causation part of a retaliation claim, a plaintiff "must show that the allegedly adverse action occurred in circumstances from which a reasonable jury could infer retaliatory intent." Treglia, 313 F.3d at 720. "[A] close temporal relationship between a plaintiff's participation in protected activity and an employer's adverse actions can be sufficient to establish causation." Id. Five months between the complaint and the adverse action "is not too long to find the causal relationship." Gorzynski v. JetBlueAirways Corp.,

30

596 F.3d 93, 110 (2d Cir. 2010).  When an employer has an especially complicated

decision-making hierarchy "a five month-time frame "satisfy the 'in custody' requirement of

the federal habeas statutes by showing that he is subject to 'a significant restraint upon his

physical liberty not shared by the public generally.'" Rutigliano, 887 F.3d at 105 for a

decision to fire an employee may not be exceptional." Rasmy, 952 F.3d at 391.  Here,

Plaintiff points to complaints that he made directly to Tripoli and Stefanelli about

comments that Ring made to him.  His firing followed close on those reports.   None of his

complaints, discussed above, however, involved any specific allegations that Monro

mistreated women.  A reasonable juror could not infer retaliatory intent from complaints

about discrimination unrelated to sex.  The Court will therefore grant the motion with

respect to any claims about discrimination related to sex, whether brought under federal

law or the NYSHRL.

## 2.    Disability Discrimination

Defendant next argues that the Court should grant judgment on  Plaintiff's claims of

retaliation related to his requests for accommodations for his disability.  Defendant argues

that the evidence indicates that Monro accommodated any requests Plaintiff made related

to his illness, and that no evidence indicates that Plaintiff suffered any adverse

employment action for seeking accommodations.  Plaintiff again fails to respond to this

argument but instead focuses on alleged retaliation for complaining about Ring's

treatment.

The Court will grant the motion in this respect as well.  As explained, Plaintiff

presents no evidence of an adverse employment action related to his requests for

accommodations related to his disability.  He agrees that Defendant met his requests for

accommodation, and took no adverse employment action against him because of his illness. Defendant attempted to accommodate the disability, and Plaintiff's firing did not come in connection to any requests for accommodation. As with his alleged complaints about sex discrimination, his alleged complaints about disability accommodations were not a subject of his email to Maxwell, whether the decisionmakers saw that email or not. The motion will be granted with respect to Plaintiff's retaliation claims with reference to Plaintiff's disability.

### 3.      Age Discrimination

The remaining issue as to retaliation, then, is whether evidence exists to support a prima facie case that Defendant retaliated against Plaintiff for complaining about age discrimination. Plaintiff argues that his email to Donna Maxwell and Tripoli concerning Ring's treatment of him represented a report of age discrimination. He contends that evidence exists that both Stefanelli and Tripoli were aware of his email to Maxwell before they fired him.[6] Since they fired him quickly after he reported discrimination, Plaintiff claims, a jury would be permitted to conclude that the firing was retaliatory.

_____

[6]Plaintiff asserts that a factual issue exists because questions exist: whether plaintiff's November 17, 2019 email to Donna Maxwell complaining of Tim Ring was shared with Ring, which would violate defendant's confidentiality policy, and again show Stefanelli and Tripoli's concerns about plaintiff were not quite what they professed. At his November 19, 2019 meeting with Stefanelli and Tripoli, Plaintiff directly questioned whether the email was shared. Tripoli "turned beet red" saying nothing in response and Stefanelli was silent. *Qui tacet consentire vedetur* (He who is silent is considered as assenting when his interest is at stake). Plaintiff also sent Stefanelli and Tripoli a summary of the meeting in which he asserted the email was shared, and invited any disagreement with the summary's contents. He got none. *Qui no negat fatetu* (He who does not deny admits). Additionally, Tim Ring's declaration makes no denial he mocked plaintiff's age and health condition, which Marcel Baumann's declaration says he did.
Plaintiff's Brief in Opposition, dkt. # 22-5, at 4-5 (internal citations omitted).

More detail on this issue is useful.  Plaintiff sent the email in question to Donna Maxwell on November 17, 2019 at 3:49 p.m.  See Exh. C to Tripoli Declaration, dk5. # 19-5.  He copied Tripoli on the email.  Id.  Plaintiff explains that "I am writing this to you to report some serious issues regarding myself, my supervisor and age discrimination."  Id.  "Tim Ring," Plaintiff reports, "refers to me in public as John Wayne (an old gunslinger)." Id.  Plaintiff then explains that, during discussions over reducing employment numbers, Ring engaged in a "one way conversation that when I tried to speak he would speak over me in a demeaning manner."  Id.  Plaintiff complained about the specific management decisions in question and that stated: "This is what I'm asking.  I want a complete cease and desist from Tim Ring.  I respect him.  I think he is a smart good zone manager."  Id.  At the same time, however, Plaintiff reported that he did "not like the following: being spoken down to, like I have not been doing this same work since 1988.  Being forced to switch so fast to everything electronic and referring to my age because I have not been able to comply with these changes as fast, not due to my age, but because" of technical difficulties.  Id.  After further complaints and explanations about his success in managing certain stores, Plaintiff related that "I want the respect I deserve in the position I hold without my name being related to age.  Without being talked down to.  Without giving mixed messages about personnel."  Id.  In the end, Plaintiff claimed that "I do not and will not tolerate any form of retaliation from Tim for me reporting this unethical and demeaning way of handling our Teammates, or any other comments of me being old and aged/I'm 56 not 86."  Id.

After meeting with Tripoli and Stefanelli on November 19, 2019, Plaintiff wrote them a message.  See Exh. M to Tripoli Declaration, dkt. # 19-4.  Plaintiff stated that "I thought it

33

would be helpful for us to have a summary of today's meeting to ensure that we are all on the same page with expectations and next steps."  Id.  Plaintiff first related that his "email regarding concerns I had with Tim was shared with him and interpreted as an attempt to mitigate possible adverse outcomes for myself due to the situation with Shannon."  Id. According to Plaintiff, "[d]iscussion regarding these issues" led to a number of items, including that "[i]n the future, should concerns arise regarding supervision, the concern will not be forwarded to the supervisor in question."  Rather, such "concerns will be discussed with those involved with anonymity of the complainant and the situation handled as seen fit."  Id.  Plaintiff claimed that his complaint about Ring was not related to any sense that Plaintiff felt he was in "jeopardy" because of the way that he had handled the complaint about sexual harassment.  Id.  He raised the issues about Ring, because he felt that sharing such concerns "was important to address to improve the current working relationship with Tim."  Id.  Plaintiff agreed that he, Tripoli, and Stefanelli had discussed his concerns about Ring, but Plaintiff related that he was "concerned about retaliation and would like some assurances that this will not be the case."  Id.

Stefanelli wrote to Plaintiff on November 20, 2019 to inform him that he was terminated from his position as Market Manager.  See Exh. N to Tripoli Declaration, dkt. # 19-4.  The termination was effective on that day.  Id.  Stefanelli informed Plaintiff that the termination was "result of gross misconduct involving fabrication of employee performance documents."  Id.  A "Separation Notice" that Stefanelli provided stated that Plaintiff had "submitted performance documentation to Human Resources requesting the termination of an employee in your area due to unsatisfactory attendance."  See Exh. O to Tripoli Dec., dkt. # 19-4.  Monro reviewed that documentation and determined that Plaintiff had

34

directed another employee to fabricate attendance warnings for the employee in question, and Stefanelli cited those actions as grounds for firing.  Id.  Plaintiff disputed the basis for his firing, stating "I think this is in direct retaliation for my letter regarding my supervisor Tim Ring.  Also I feel that my discussion with Tim Ring about my health concerns, where he freaked out about 'warning him' have played a part in my dismissal from employment." Id.

The Court notes that "[t]he burden of proof that must be met to establish a prima facie case" in the employment discrimination context "is minimal."  Hollander v. American Cyanamid Co., 172 F.3d 192, 199 (2d Cir. 1999).  Further, as explained above, a close temporal proximity between the alleged protected activity and an adverse employment action can be evidence that the protected activity caused the adverse employment action. Given the limited nature of Plaintiff's burden in this respect, the Court finds that Plaintiff has–barely–met that burden.  While the Court recognizes that Plaintiff's complaint of age discrimination came after Plaintiff became aware that Tripoli and Stefanelli were investigating his conduct concerning Meher, the Court finds that there is evidence that a jury could use to conclude that Tripoli and Stefanelli were aware of his complaints when Plaintiff was terminated.  While a reasonable juror could certainly view Plaintiff's complaints as an insincere attempt to salvage a job that seemed to be slipping away, such a juror could also reasonably infer that Plaintiff's complaints about age discrimination led to Plaintiff's firing.  Plaintiff has made out a prima facie case in this respect only.

### b.    Legitimate Non-Discriminatory Reasons

If a plaintiff makes out a prima facie case for retaliation, "the defendant may rebut that showing by articulating a legitimate, non-discriminatory reason for the employment

action." Weinstock, 224 F.3d at 42.  "A defendant meets this burden if he presents reasons that, 'taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action.'" Adu-Brisson v. Delta air Lines, Inc., 239 F.3d 456, 469 (2d Cir. 2001) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)).  Here, the Court has found only that Plaintiff has made out a *prima facie* case with respect to his retaliation claims related to age discrimination.  Even if the Court has erred in reaching conclusions about whether Plaintiff has facts to support a prima facie case with reference to the other forms of discrimination discussed here, the Court would reach the same conclusion about whether Plaintiff has offered legitimate non-discriminatory reasons for terminating the Plaintiff.

Defendant contends that Monro had a legitimate non-discriminatory reason for firing Plaintiff: Tripoli and Stefanelli found that Plaintiff had fabricated documents while investigating claims of sexual harassment at one of the stores that he managed.  The evidence related above indicates that Tripoli and Stefanelli found that Plaintiff did not follow the procedures the company mandated when Meher made her complaint of sexual misconduct at work.  Instead, they found, Plaintiff allegedly encouraged others to fabricate documents that reflected poorly on Meher and justified terminating her.  Defendant contends that "Plaintiff was terminated for the falsification of company records in an attempt to have one of his subordinates unjustifiably (and seemingly unlawfully) terminated."

While Plaintiff disputes that the reasons stated for his termination were the real reasons for that action, he does not argue that the reasons provided by the Defendant are legitimate non-discriminatory reasons for the employment action.  Based on the evidence

summarized above, the Court finds that evidence exists to support Defendant's claim that Monro fired Plaintiff because of his conduct of the investigation into Meher's claim of sexual harassment.  The Court finds that Defendant has met its burden in this respect.

   **c.**  **Pretext**

   Once a defendant satisfies this burden to present legitimate non-discriminatory reasons for the employment decision, "the presumption of discrimination arising with the establishment of the *prima facie* case drops from the picture." Weinstock, 224 F.3d at 42. "[T]he plaintiff must then come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination." Id. A plaintiff may meet this burden "by demonstrating weaknesses, implausibilities, or contradictions in the employer's proffered, legitimate, non-retaliatory reasons for its actions. From such discrepancies, a reasonable juror could conclude that the explanations were pretext for a prohibited reason." Kwan v. Andalex Grp., LLC, 737 F.3d 834, 846 (2d Cir. 2013). "Temporal proximity alone is insufficient to defeat summary judgment at the pretext stage," but "a plaintiff may rely on evidence comprising [his] prima facie case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment[.]" Id. at 847.  "[T]he way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove–particularly discrimination." James v. New York Racing Ass'n, 233 F.3d 149, 157 (2d Cir. 2000).  A retaliation claim requires a showing that "retaliation was a 'but-for' cause of the adverse action, and not simply a 'substantial' or 'motivating' factor in the employer's decision."

Kwan, 737 F.3d at 845.  Such "'but-for' causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive."  Id. at 846; see also, Lively v. WAFRA Inv. Advisory Grp., Inc., 6 F.4th 293, 307 (2d Cir. 2021)(age-discrimination retaliation requires proof of but-for causation).

Here, Defendant argues that none of the decisionmakers regarding Plaintiff's termination were aware of any age-based comments that Ring alleged made when their investigation into his conduct began, and that Plaintiff can offer only conclusory and unsupported accusations of pretext.  Plaintiff responds that questions of fact exist over whether Plaintiff was fired for falsifying company records.  He argues that questions exist over whether he actually falsified records, whether Tripoli and Stefanelli conducted a proper investigation, and whether they coerced statements from workers who later retracted them.  He complains that they failed to take a statement from Don Durkin, who had also reported on Meher's attendance issues, and from Mike Kinns, a store manager who signed the attendance reports allegedly in contention.  Plaintiff also points to the disputes about whether Tripoli and Stefanelli had been apprised of Plaintiff's email about Ring.  Plaintiff also points to the temporal proximity between his firing and his complaint as evidence to support pretext.

The question, then, is whether Plaintiff has put forth sufficient evidence for a reasonable juror to conclude that retaliation was the but-for cause of his termination, and that his alleged misconduct surrounding Meher's complaint of sexual harassment was mere pretext for Defendant's real motivation.  As explained above, Stefanelli and Tripoli gathered evidence that indicated that, when confronted with a complaint of sexual

harassment from one of his employees, Plaintiff did not address the accusation with any discipline, but instead enlisted other employees in an effort to create a poor work history for the accuser that would justify her firing.  Plaintiff points to evidence that he claims indicates that Stefanelli and Tripoli pressured one employee into making false statements, which she later recanted.  He also contends that the evidence they conducted was not sufficient to gather all of the facts.

As explained, Plaintiff must point to evidence of record that indicates "weaknesses, implausibilities, or contradictions in the employer's proffered, legitimate, non-retaliatory reasons for its actions" sufficient for a reasonable juror to find pretext if Plaintiff hopes to avoid summary judgement.  Kawn, 737 F.3d at 846.  The Courts finds that Plaintiff has–barely–produced such evidence.  As explained above, there is evidence from Simons that her statements to Stefanelli and Tripoli regarding Plaintiff's alleged directions to create false records about Meher came only because of pressure from those two.  If a juror believed this testimony, that juror might also reasonably believe that Stefanelli and Tripoli acted not because their investigation had revealed misconduct, but because of an attempt to manufacture a reason to terminate Plaintiff.  As their recommendation for termination came after evidence indicates that Plaintiff made them aware of his complaints against Ring for age discrimination, a reasonable juror could conclude that the reason that the but-for cause of Plaintiff's termination was his complaints about age discrimination.  The Court will therefore deny the motion with respect to this claim.

### d.   Damages

Defendant next argue that Plaintiff should be precluded from obtaining front or back pay as a remedy for the alleged retaliation because the Social Security Administration has

determined he was disabled as of December 2019.  Defendant also argues that, if Plaintiff contends that he is capable of working, his damages for front and back pay should be precluded because he has failed to seek other employment since his termination.  Plaintiff has not responded to these arguments.

"In fashioning a remedy for discrimination, a court should place 'the injured party . . . as near as can be, in the situation he would have occupied if the wrong had not been committed.'" Thornley v. Penton Publ., 104 F.3d 26, 31 (2d Cir. 1997) (quoting Albemarle Paper Co. v. Moody, 422 U.S. 405, 418-19 (1975)).  As a general matter, a plaintiff who prevails on an employment discrimination claim is "entitled to an award of back pay from the date of her termination until the date of judgment."  Saulpaugh v. Monroe Cmty. Hosp., 4 F.3d 134, 144 (2d Cir. 1992). An award of back is designed "to completely redress the economic injury the plaintiff has suffered as a result of discrimination.'" Id. at 145 (quoting Gutzwiller v. Fenik, 860 F.2d 1317, 1333 (6th Cir. 1988)).  A person who receives disability payments, however, cannot work, and is not entitled to damages from back pay during periods of disability.  Id.  The person's lost income during those periods is not a loss "suffered as a result of discrimination."  Id.  As such, damages do "not extend to granting back pay for a period when a plaintiff would have unable, due to an intervening disability, to continue employment."  Thornley, 104 F.3d at 31.

The undisputed evidence here indicates that Plaintiff began receiving Social Security Disability benefits after Defendant terminated his employment.  The Court agrees with the Defendant that Plaintiff may not obtain back pay for any period in which he received Social Security disability benefits.  Plaintiff is foreclosed from claiming any back pay for periods in which he received Social Security disability payments.  Similarly, Plaintiff

is not eligible to obtain front pay for periods in which he cannot work.  Kovaco v.
Rockbestos-Surprenant Cable Corp., 979 F.Supp.2d 252, 262 (Dist. Conn. 2013).  No
evidence is before the Court concerning the expected duration of the disability for which
Plaintiff currently receives disability payments, nor is there evidence of precisely when
Plaintiff began receiving such benefits.  As such, the Court will wait until the evidence
regarding damages and disability appear at trial before deciding for what periods Plaintiff
may obtain damages.  Defendant's similar claim that Plaintiff is not entitled to front pay
because he failed to mitigate his damages by seeking another job is likewise best resolved
at trial, when questions of fact can be addressed.

## IV.     CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment, dkt. #
19, is hereby **GRANTED** in part and **DENIED** in part.  The motion is **DENIED** with respect
to Plaintiff's state and federal retaliation claims based on age discrimination and
**GRANTED** with respect to all other claims.

**IT IS SO ORDERED.**

**Dated:** November 21, 2022

Thomas J. McAvoy
Senior, U.S. District Judge

41